BOUTALL, Judge.
Appellant, Mar-Cham, Inc., was the third party defendant in a suit on open account *271 by R.J. Daigle and Sons Contractors, Inc., against Sampey Brothers general contractors. Mar-Cham appeals the judgment against it in favor of Sampey Brothers in the amount of $52,329.00. We affirm in part and amend in part.
FACTS
This dispute arose around the construction of Pecan Oak Subdivision in Paradis, St. Charles Parish.
In the course of construction R.J. Daigle and Sons had contracted with Sampey to supply some $15,000.00 worth of sand to be used in raising the grade of a street in the subdivision. The cost of this sand was not included in Sampey’s original bid to Mar-Cham however Larry Sampey testified there was an oral agreement by Julian Champagne, the president of Mar-Cham, to pay for the extra sand. R.J. Daigle was a witness to that agreement. Near the end of the five month completion time specified in the contract disputes arose between the Sampeys and Julian Champagne. Mar-Cham refused to pay the 10% retainage and the extra sand cost, and Sampey could not pay Daigle. Daigle sued Sampey, who third-partied Mar-Cham. Mar-Cham reconvened against Sampey for breach of contract for failure to complete work timely and in a workmanlike manner.
As work progressed on the subdivision the originally cordial relationship between the Sampeys and Julian Champagne deteriorated due to many factors. The whole project was hastily put together and lacked careful planning and supervision. Julian Champagne, who was on the site supervising almost every day, testified that this was his first subdivision venture. His inexperience is evident from his testimony. For example, he entered into many oral changes of the contract and on one occasion even altered the blue prints without consulting the engineer.
The blue prints, prepared by George Schrenk & Associates of New Orleans, were originally designed for concrete streets and sub-surface drainage. The cost of such construction proved to be prohibitive and the Sampey’s bid was for blacktop roads and ditch drainage. The blueprints were never completely amended for the change in design. The location of the ditches and sewer lines was not specified on the plans, and changes had been scribbled in in pencil.
The surveyor in charge of plotting out the location of lots and streets was Roland Bernard. Bernard calculated the road grade elevations, which were then incorporated into Schrenk’s blueprints. Some of the elevations were incorrect. One of the streets he had plotted out was 50 feet off target. While he should have provided 30 control points from which the Sampeys could square the corners of the streets, a Sampey surveyor testified that he could only find four. Some of the ditch depths were also incorrect. The work which had already been done had to be redone as these deviations were discovered. The Sampeys testified that Roland Bernard was often hard to find when these problems arose, and that Schrenk was impossible to contact.
Additionally Julian Champagne had unwittingly added to the Sampey’s difficulties by having another contractor come in before the Sampeys to cut some of the streets. One street had been cut a foot too low.
The delays which Mar-Cham claims put Sampey in breach of contract were caused by all of the above factors as well as bad weather in February of 1979. Flooding in R.J. Daigle’s sand pits caused a delay of at least six weeks in furnishing sand to fill in the street that was too low.
The contract between Mar-Cham and the Sampeys specified that all work would be completed within five months, i.e., by July 1, 1979. Larry Sampey testified that at that time 99% of the work was completed, excluding another street where the grade was too low and the fact that the water lines in the ditches did not have sufficient dirt cover. Mr. Schrenk was in Europe for three weeks and was unavailable to advise on these matters. At Julian Champagne’s instigation the contract was extended until September 1,1979 on the condition that the Sampeys correct the above-mentioned prob-. *272 lems and haul away felled trees. Sampey testified that but for Schrenk’s unavailability work would have been completed by September first. The Sampeys did eventually correct the problem with insufficient cover over the water lines, but contended that there was never any agreement about the trees.
The subdivision was inspected and recommended for acceptance by St. Charles Parish Engineers on November 28, 1979. At this time the waterworks was only conditionally approved and did not gain final approval until April 2,1980. It is the Sam-peys’ position that the Parish’s recommendation of acceptance on November 28, 1979 amounted to substantial completion of their contractual duties.
Nevertheless Julian Champagne remained dissatisfied with the work and made several demands through his attorney for the Sampey’s to return and remove trees and dirt, among other things. The Sam-peys refused.
The subdivision was dedicated to the Parish on April 7, 1980, however, in May and June of 1980 Julian Champagne contracted with St. Charles Enterprises to come in and finish the work by removing trees and dirt and regrading ditches. The cost of this work was $23,000.00.
ISSUES
Appellant Mar-Cham assigns as error almost every finding of fact by the trial judge, and raises four issues in its brief.
1) Is Sampey entitled to collect the entire remaining balance of the contract price?
2) Is Sampey entitled to extra funds for the extra materials used?
3) Is Sampey entitled to attorney’s fees?
4) Is Mar-Cham entitled to attorney’s fees?
In his Reasons for Judgment the trial judge found that recommendation for acceptance by the Parish Engineer on November 28, 1979 amounted to substantial performance of the contract by Sampey Brothers. He also found that the deficiencies and delays of which Mar-Cham complained were not the responsibility of Sam-pey. From our reading of the record we cannot say that the trial judge was in error in these findings of fact. We concur with the trial court’s opinion that “... the entire contractual relationship between the parties left a lot to be desired,” and that the incorrect plans and specifications, as well as confusion over who was responsible for what, all contributed to the delays in construction.
The trial judge awarded judgment in favor of R.J. Daigle against Sampey Brothers in the amount of $14,139.00, and judgment in favor of Sampey against Mar-Cham in the amount of $52,329.00 as follows:
Balance of contract retainage $38,560.00
Additional sand 9,012.00
Attorney’s fees 4.757.00
$52,329.00
We amend to set aside that portion of the judgment which awards attorney’s fees to Sampey Brothers. The law is well settled in this state that attorney’s fees are not a proper element of recovery in a contract case unless a statute or the contract provides for them. Dickson v. Moran, 344 So.2d 102 (La.App. 2d Cir.1977). No statute has been argued by either party to apply to this situation, and the contract provided only for attorney’s fees for Mar-Cham. Since Mar-Cham has been cast in judgment we decline to award it attorney’s fees, but under our law Sampey is not entitled to them either.
Additionally we amend to award Mar-Cham $750.00 which it was forced to pay to have a missing fire hydrant installed in the subdivision before it could gain Parish approval of the subdivision’s water system.
In accordance with the above, we amend the judgment in favor of Sampey Brothers general contractors to the sum of $46,822.20 and as thus amended we affirm. Costs of this appeal to be assessed equally on appellant and appellee.
AFFIRMED IN PART, AMENDED IN PART.